IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

JEANNE KNEZEL,                           Case Number:
    Plaintiff,
v.

WILMINGTON SAVINGS FUND SOCIETY
FSB DBA CHRISTIANA TRUST AS TRUSTEE
OF THE RESIDENTIAL CREDIT
OPPORTUNITIES TRUST AND THE BANK
OF AMERICA, N.A.,
    Defendants.
_____/

## COMPLAINT

**COMES NOW** the Plaintiff, JEANNE KNEZEL, by and through undersigned counsel and hereby files this Complaint against WILMINGTON SAVINGS FUND SOCIETY FSB DBA CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST (hereinafter referred to as Wilmington) and THE BANK OF AMERICA, N.A. (hereinafter referred to as BOA), and states as grounds in support thereof:

### GENERAL FACTS

1. This is an action for damages in excel of $15,000 exclusive of interest, costs and attorneys; fees and is within the jurisdiction of this Court.

2. This is an action for violation of the Florida Consumer Collection Practices Act, Fla. Stat 559.72 ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"), Breach of Contract, Fraud, Intentional Infliction of Emotional Distress, Wrongful Foreclosure and Wrongful Cancellation/Refusal to Accept Homeowner's Insurance.

3. Venue is proper because the subject property lied in Polk County, Defendants transact business in Polk County, and the conduct complained of occurred in Polk County.

4.  At all times material hereto, Plaintiff Jeanne Knezel was and is a resident of Polk County Florida, is a "consumer" as that term is defined by the FCCPA and FDCPA and is otherwise *sui juris*.

5.  At all times material hereto, Defendant Wilmington was and is a a trust existing under the law of the state of Delaware and has engaged in business, including foreclosure litigation, in the Courts of Florida,  is in the business is servicing and collecting consumer debt and is, therefore, a "debt collector" as that term is defined by the FCCPA and FDCPA and is otherwise *sui juris*.

6.  At all times material hereto, Defendant BOA was and is a North Carolina corporation doing business in the state of Florida, has engaged in foreclosure litigation in the Courts of Florida, is in the business is servicing and collecting consumer debt and is, therefore, a "debt collector" as that term is defined by the FCCPA and FDCPA and is otherwise *sui juris*.

7.  Wilmington and BOA regularly uses the mail and telephone in a business the principal purpose of which is the collection of consumer debt.

8.  At all times material to the allegations of this Complaint, Wilmington and BOA were acting as a debt collectors with respect to the collection of Plaintiff's alleged consumer debt.

9.  In December of 2003, Plaintiff and James Ames (her husband at the time) purchased their home located at 6709 O'Doniel Loop, Lakeland, FL, 33809-4665 and financed the home with Sun Trust.

10. On or about November 8th, 2005, Plaintiff and James Ames refinanced their home with Bank of America, N.A.

11. The home was part of a homeowners' association requiring homeowner's insurance that covered the fencing of the property and otherwise.

12. The home was financed with a Note thru BOA that was sold to Freddie Mac, then subsequently Freddie Mac required BOA to re-purchase the Note and thereafter lost by BOA.

13. At the closing with BOA, the agreement for the payment of the Note and the Monthly payments were agreed to as the PRINCIPAL AND INTEREST ONLY.  There were NO Escrow payments and the entire escrow account was EXEMPT for this Note Payment, as demonstrated by the payment history. At the closing, there was an agreement with the Borrower's Insurance company that the insurance company would include the Lender as an "additional insured" on the Borrower's homeowner's insurance Policy.

14. BOA's accounting failed to accurately reflect payments made or debits posted, even to the point of beginning the loan with $441.42 due and owing prior to the first payment being owed.

15. BOA thereafter began assessing forced place insurance payments despite the fact that Plaintiff had purchased and paid for the first year of homeowners' insurance immediately.  BOA credited Plaintiff's account for the wrongfully force placed insurance (without correcting the late payments, excess interest or administrative charges), then repeated its practice of force placing homeowner's and flood insurance and the cycle continued until Boa filed a 2009 foreclosure action based on a lost note that was ultimately voluntarily dismissed.

16. BOA refused the insurance Plaintiff had on the premises and instead purchased forced placed insurance thru Balboa Ins. Co. despite having at least one cease and desist order not to do.

17. As a result of the stress, humiliation and suffering of being wrongfully foreclosed, Jeanne Knezel and James Ames were divorced in May of 2010.

18. In June of 2010, James Ames filed a chapter 7 bankruptcy and was discharged in October of 2010.  At no time therein did BOA or Freddie Mac file a proof of claim, rendering the Note

3

herein void and terminated, which rendered the Mortgage herein without meaning, force or effect.

19. In June of 2011, James Ames executed a quit claim deed to Jeanne Knezel for all of his interest in the property located at 6709 O'Doniel Loop, Lakeland, FL, 33809-4665.

20. BOA then claimed to have sold the lost note to Wilmington, who failed to vet or otherwise investigate or verify the accuracy of the claim and ultimately filed a wrongful foreclosure action against Jeanne Knezel.

21. On or about June 18th, 2015, Defendant Wilmington filed a verified complaint for foreclosure and to re-establish a lost note.

22. BOA had claimed to Defendant Wilmington that it owned and had the right to sell the Note herein to Wilmington, that the insurance had to be forced placed, and that taxes had to be paid by them.

23. Since Plaintiff had timely paid her real estate taxes as well as provided proper and adequate insurance for the property, no proper claim of foreclosure could be based on same; however, in this mortgage, no escrow was ever contemplated or agreed to by which payments could be diverted for payment of same.

24. BOA's diversion of Plaintiff's payments of principal and interest into any other account, such as for payment of insurance and taxes or suspense accounts, is a fiduciary breach of its obligations, reflects an illegal use of Plaintiff's payments, has no contractual support, and appears to be theft.

25. BOA has acknowledged that it had no right to divert principal and interest payments for forced place insurance that it imposed on Plaintiff,  by crediting the wrongfully imposed

4

insurance in some cases years after the misapplication of Plaintiff's payments, but failed to correct the accounting errors caused by the wrongfully diverted monies.

26. Plaintiff recently became aware of the extent of these improper and likely illegal actions perpetrated by BOA without any legal justifications when Lonnie Mills of BOA admitted this was done in his recent deposition.

27. Plaintiff also became aware in 2018 that the alleged assignments of mortgage initiated by BOA are also false and fraudulent since the Note initially sold to Freddie Mac was placed in a trust, the Mortgage was separated from the Trust and therefore any entitlement to foreclose was extinguished.

28. Having no contractual right to make payments on the real estate insurance or to pay taxes, the underlying basis of the foreclosure is erroneous, a breach of contract, false, fraudulent and reflects an act of intentional dishonesty that should be sanctioned.

29. Defendant's actions are in violation of Florida Statute 817.545 and, although this statute does not provide a private cause of action for the criminal behavior of BOA, such violation does provide evidence that the conduct was reckless or intentional for purposes of intentional infliction of emotional distress.

30. BOA failed to accept timely payment of the Note from Jeanne Knezel on the grounds that the payment came from an account that did not belong to James Ames, which is an improper basis to refuse a payment on a Note.

31. BOA also refused to accept payments from Jeanne Knezel on the grounds that they refused to accept the insurance Jeanne Knezel had purchased for years and was timely on the payments, though it did acknowledge years later that it had made a mistake; then BOA failed or

refused to correct the accounting errors created by BOA when it wrongfully refused payments on the Note.

32. BOA lost the right to claim any defect in the Mortgage when it breached its obligations under the Note, as referenced above.

33. Wilmington has become aware of the facts supporting a wrongful foreclosure as well as the facts upon which its claim of foreclosure should fail and has elected, despite such knowledge, to continue prosecuting it false claim of foreclosure.

34. Defendant has been required to obtain the services of competent counsel to represent her in the above styled case and is entitled to recover her attorneys' fees and costs as per the subject Note, Mortgage, Florida Statute §57.105 and Florida Rule of Civil Procedure 1.420.

35. Defendant-Plaintiff demands trial by jury of all issues so triable.

## COUNT I:  BREACH OF CONTRACT
### (Jeanne Knezel re-alleges and incorporates paragraphs 1-35)

36. At all times material hereto, Third Party Plaintiff had entered into a Note and Mortgage with BOA.

37. The Mortgage did not permit any payments made by Third Party Plaintiff to be applied to anything but principal and interest on the Note.

38. The Mortgage also required Third Party Plaintiff to pay for real estate insurance and to pay the taxes on same.

39. BOA wrongfully rejected the insurance Third Party Plaintiff had purchased, forced placed insurance with Balboa, a wholly owned subsidiary, at a substantially elevated price for insurance that failed to protect the property, failed to include Third Party Plaintiff's name and did not comply with the Home Owner's Association requirements, rendering such insurance a nullity.

6

40. On October 3rd, 2011, BOA had a consent order issued from the New York State Dept. of Financial Services effectively sanctioning BOA for its practices of force placing insurance through Balboa and ordering it to cease from such activities.

41. BOA continued to place Balboa insurance and did so with regard to Third Party Plaintiff herein in violation of this consent order.

42. BOA's wrongful actions were barred by the Mortgage, barred by the consent order and barred by notions of equity and applicable herein.

43. BOA's diversion of Principal and Interest payments to suspense accounts, payment of insurance and taxes, or otherwise reflect a misuse of monies for which a bank should be sanctioned, charged with felonious conduct, and prevented from perpetrating frivolous litigation.

WHEREFORE the Defendant/ Third Party Plaintiff respectfully moves this Honorable Court for Judgment  against Third Party Defendant awarding compensatory damages for the failure to procure insurance on the property for the amount of damages sustained by Hurricane Irma, the damages caused by the resultant failure to repair such as mold, deterioration and excess wear and tear, pain and suffering, pain, suffering, humiliation, wrongful foreclosure,, reasonable attorneys' fees, costs and any other damages this Honorable Court deems mete and proper.

### COUNT II:  INTENTIONAL AND/OR NEGLIGENT
### INFLICTION OF EMOTIONAL DISTRESS
### (Jeanne Knezel re-alleges and incorporates paragraphs 1-43)

### AS TO WILMINGTON

44. The institution of a foreclosure action by Defendant when it knew or should have known that it did not have any viable claim to a Note rendered its claim frivolous.

45. Defendant's actions included: falsely accusing the Plaintiff numerous times of being dishonest; engaging in bullying tactics; and, otherwise attempting to wear down the spirits of

Plaintiff in order to prosecute the frivolous and meritless claims it was wrongfully pursuing, by claiming to the court that Plaintiff could purchase a second policy of insurance on the property in violation of insurance laws, customs and practices which would have resulted in a nullified policy and potential criminal charges.

46. The Defendant never owned a Note or mortgage, sued for foreclosure wrongfully, accused the Plaintiff of being dishonest, accused all of the contractors who had worked on Plaintiff's home as fraudulently colluding with Plaintiff in order to perpetrate a fraud on Defendant, claimed that it paid for insurance on the home (which turned out to be another false statement), claimed that Plaintiff had failed to timely pay her mortgage (another false statement), failed to properly decelerate the debt after BOA's foreclosure was voluntarily dismissed, and sought to take Plaintiff's home from her without any right whatsoever.

47. The stress of the wrongful actions of the Defendant caused continuous emotional despair, stress and pressure to the Plaintiff and either caused or exacerbated the gall bladder injuries resulting in surgery (which Defendant attempted to claim was a fabrication and never actually occurred despite having no reason other than to cause additional emotional distress to Plaintiff).

48. Defendant actions were reckless or intentional, were extreme and outrageous, caused severe emotional and physical distress to Plaintiff.

8

Case Number: 2015CA-002223

## AS TO BOA

49. The institution of a foreclosure action by BOA when it knew or should have known that it did not have any viable claim to a Note rendered its claim frivolous.

50. BOA's actions included falsely accusing the Plaintiff numerous times of failing to purchase property insurance, engaging in bullying and otherwise attempting to wear down the spirits of Third Party Plaintiff in order to prosecute the frivolous and meritless claims it was wrongfully pursuing, failing to accept the proper insurance on the property, rejecting the homeowner's insurance Plaintiff had on the property, selling a lost note affidavit with false information to Wilmington under the false pretenses that a foreclosure was proper, prosecuting a foreclosure action on a discharged debt contrary to federal bankruptcy law, and providing a witness who had no personal knowledge to testify with incomplete records and false facts.

51. The stress of the wrongful actions that BOA initiated in rejecting proper, reasonably priced insurance in favor of insurance it had previously been sanctioned for force placing, of falsely selling a Note and Mortgage it did not own to Defendant and the resultant continuous emotional despair, stress and pressure to the Third Party Plaintiff which either caused or exacerbated the gall bladder injuries resulting in surgery.

52. BOA's actions were reckless or intentional, were extreme and outrageous, caused severe emotional and physical distress to Third Party Plaintiff.

53. The actions of BOA are materially the cause of the wrongful foreclosure filed by Defendant Wilmington and BOA's failure or refusal to cease from continuing the wrongdoings it initiated illustrate shocking behavior, especially when coming from a banking institution that is a national association.  The level and degree of improper behavior necessary to continually and indifferently hurt American citizens, of which Jeanne Knezel is one, should result in

9

accountability; as such, BOA should be found liable to Third Party Plaintiff Jeanne Knezel for its bad faith conduct, its contemptible actions and attitudes, and its resultant intentional infliction of emotional distress. The institution of a foreclosure action by Defendant when it knew or should have known that it did not have any viable claim to a Note rendered its claim frivolous.

54. Defendant's actions included: falsely accusing the Plaintiff numerous times of being dishonest; engaging in bullying tactics; and, otherwise attempting to wear down the spirits of Plaintiff in order to prosecute the frivolous and meritless claims it was wrongfully pursuing.

55. The Defendant never owned a Note or mortgage, sued for foreclosure wrongfully, accused the Plaintiff of being dishonest, accused all of the contractors who had worked on Plaintiff's home as fraudulently colluding with Plaintiff in order to perpetrate a fraud on Defendant, claimed that it paid for insurance on the home (which turned out to be another false statement), claimed that Plaintiff had failed to timely pay her mortgage (another false statement), failed to properly decelerate the debt after BOA's foreclosure was voluntarily dismissed, and sought to take Plaintiff's home from her without any right whatsoever.

56. The stress of the wrongful actions of the Defendant caused continuous emotional despair, stress and pressure to the Plaintiff and either caused or exacerbated the gall bladder injuries resulting in surgery (which Defendant attempted to claim was a fabrication and never actually occurred despite having no reason other than to cause additional emotional distress to Plaintiff).

57. Defendant actions were reckless or intentional, were extreme and outrageous, caused severe emotional and physical distress to Plaintiff.

WHEREFORE the Defendant/Third Party Plaintiff respectfully moves this Honorable Court for Judgment  against Third Party Defendant awarding damages for the intentional infliction of emotional distress as a result of Third Party Defendant's: wrongfully foreclosing on

Defendant/Third Party Plaintiff, failing to procure insurance on the property for the amount of damages sustained by Hurricane Irma, the damages caused by the resultant failure to repair such as mold, deterioration and excess wear and tear pain and suffering, pain, suffering, humiliation, wrongful foreclosure,, reasonable attorneys' fees, costs and any other damages this Honorable Court deems mete and proper.

### COUNT III: FALSE INSURANCE/WRONGFUL FORECLOSURE
### (Jeanne Knezel re-alleges and incorporates paragraphs 1-57)

58. The underlying basis of the action for foreclosure was based on Bank of America, N.A.'s (BOA's) claim that Defendant failed to provide insurance as required under the Mortgage agreement.

59. Defendant Wilmington owed Plaintiff the duty to actually purchase valid property insurance, for the benefit of the mortgagor or mortgagee prior to filing a lawsuit for foreclosure based on such misleading and false claims.

60. Defendant Wilmington did not purchase any insurance on the premises at issue herein. Instead, a non-party, AMIP, that has no ownership interest in the premises filed a claim and collected insurance proceeds and paid $0 for the estimated $230,000 plus damages to the home.

61. Defendant Wilmington breached its duty to Plaintiff by filing false affidavits and verified pleadings claiming it had to pay for insurance on this property in order to support a false claim that a default occurred due to the failure to provide insurance.

62. Plaintiff had, at all times material hereto and prior to the filing of a foreclosure action by BOA, fulfilled her mortgage and note requirements of providing proper and adequate insurance and timely paying her real estate taxes and was never properly sued for foreclosure.

63. The underlying claims of BOA were false, as well as its claims that insurance and taxes had not been timely paid by Plaintiff.

64. Defendant Wilmington failed to investigate, properly vet or analyze the underlying claim and wrongfully and without any merit brought suit against Plaintiff.

65. Furthermore, Defendant Wilmington claimed it had purchased insurance for the property as required under the mortgage, which Plaintiff is now aware that this claim is false.

66. The insufficient insurance purchased by AMIP, a third party to this action with no interest in the Note, Mortgage or property, failed to comply with the Home Owner Association (HOA) requirements for insurance by failing to provide coverage for the fence, and failed to provide coverage for hurricane damage as was provided by Plaintiff.

67. Defendant has not purchased any insurance as required by the mortgage herein, has not listed itself or Plaintiff as beneficiaries, and has no basis to claim damages for the forced placed insurance it perpetuated.

68. By chance, Hurricane Irma did significant damage to Plaintiff's home and, after many delays, it has now been revealed that Defendant Wilmington has never obtained or paid for valid and proper insurance for the Plaintiff's home and failed to include Defendant as a beneficiary. A company out of California, AMIP, has been paid all insurance benefits under the deficient policy despite having no ownership interest in the note, mortgage or property.

69. As such, Defendant Wilmington has filed false verified pleadings and a false Note Affidavit, acted in bad faith, breached its contract and has unclean hands preventing it from making any claims herein.

70. The Note in this action was sold to Federal Home Loan Mortgage Corp., also known as Freddie Mac, where it was placed in a trust.

71. When Freddie Mac placed the Note in a trust, the Mortgage was separated from the Trust and entitlement to foreclose was extinguished.

72. All of the alleged transfers of the Mortgage as reflected in the assignments of mortgage attached to Defendant's Complaint are false and/or fraudulent as the Mortgage was extinguished when separated from the Note.

73. Entitlement to foreclose cannot be obtained from assigning a mortgage without a Note.

74. Plaintiff has been materially harmed by the failure to provide proper insurance after rejecting her proper insurance, by filing false verified pleadings, by harassing and intimidating positions without any true basis in fact and by the wrongful conduct of both Bank of America as well as Plaintiff Wilmington.

75. Defendant Wilmington has engaged in continuous and outrageous conduct resulting in the destruction of her home without any insurance with which to effect repairs as well as the filing of false verified pleadings, the continual intimidation and the wrongful conduct without any proper ownership interest proffered pursuant to Florida Statutes relating to lost notes.

76. Defendant Wilmington has never had any legitimate claim to the Note in this matter and has filed false documents and pleadings attempting to make its false claims.

77. Since Plaintiff had timely paid her real estate taxes as well as provided proper and adequate insurance for the property, no proper claim of foreclosure could be based on same; however, in this mortgage, no escrow was ever contemplated or agreed to by which payments could be diverted for payment of same.

78. Having no contractual right to make payments on the real estate insurance or to pay taxes, the underlying basis of the foreclosure is erroneous, a breach of contract, false, fraudulent and reflects an act of intentional dishonesty that should be sanctioned.

79. Defendant Wilmington failed to review the Bank of America Records wherein Bank of America admitted error in the force placing of insurance and refunded the wrongfully diverted

monies, but failed to remove the late fees, interest or otherwise correct the accounting to reflect the timely payments made by Plaintiff.

80. Defendant Wilmington sent Plaintiff a letter on April 2nd, 2015 purporting to decelerate the prior acceleration by BOA, but failed to follow the law in Florida and merely continued with a demand as though the prior acceleration had never been decelerated. This 'fake' attempt to decelerate also demonstrates the falsity of Defendant's wrongful action.

81. Defendant's actions were without any viable legal or factual support.

WHEREFORE the Defendant/Plaintiff respectfully moves this Honorable Court for Judgment against Defendant awarding compensatory damages for the intentional infliction of emotional distress through its wrongfully bringing this foreclosure action, the failure to procure insurance on the property for the amount of damages sustained by Hurricane Irma, the damages caused by the resultant failure to repair such as mold, deterioration and excess wear and tear, pain and suffering, pain, suffering, humiliation, wrongful foreclosure, reasonable attorneys' fees, costs and any other damages this Honorable Court deems mete and proper.

### COUNT IV: VIOLATION OF THE FLORIDA CONSUMER
### COLLECTION PRACTICES ACT
(Jeanne Knezel re-alleges and incorporates paragraphs 1-81)

82. Wilmington has violated Florida Statute 559.72(9) by claiming, attempting, or threatening to enforce a debt when it knows that the debt is not legitimate or asserting the existence of some other legal right when it knows that the right does not exist.

83. Wilmington violated the FCCPA by attempting or threatening to enforce a debt that it knows is not legitimate. Wilmington has asserted that Plaintiff did not pay the Note for the property, which she did, that she did not comply with her mortgage requirements, which she did, that it had entitlement to foreclosure, which it did not, that it owned the Note and Mortgage,

14

Case Number: 2015CA-002223

which it did not as the Note was lost by BOA and the Note was discharged in bankruptcy with the knowledge of BOA and Freddie Mac, who chose not to file a proof of claim, and by claiming foreclosure due to nonpayment of insurance which Wilmington never paid itself.

84. Wilmington violated the FDCPA by falsely representing the amount of the alleged debt, attempting to collect an amount that is not expressly authorized by the agreement creating the debt and by attempting to foreclosure on a discharged debt.

85. Wilmington acts as described above were done with full knowledge and intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

86. Wilmington knew or should have known that its conduct was improper and unlawful.

87. As a direct and proximate result of Wilmington's violations of the FCCPA, Plaintiff has been damaged.  Plaintiff's damages include but are not limited to emotional distress, suffering, aggravation, humiliation, embarrassment and damage to their credit score.

88. Plaintiff has hired undersigned law firm for legal representation in this action and have agreed to pay a reasonable attorney's fee.

89. As a result of the above violations of the FCCPA, Nationstar is liable to Plaintiff for injunction and declaratory relief and for actual damages, statutory damages and reasonable attorney's fees and costs.

WHEREFORE Plaintiff respectfully request that judgment be entered against Defendant for the following:

a.  Declaratory and injunctive relief for Defendant's violation of the FCCPA;

b.  Actual damages;

c.  Statutory damages pursuant to Florida Statute 559.77;

d.  Costs and reasonable attorney's fees pursuant to Florida Statute 559.77; and

e.  For such other relief as may be deemed mete and proper.

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### (Plaintiff re-alleges and incorporate paragraphs 1-89 above)

90.  Wilmington has violated 15 USC 1692c by willfully engaging in conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt.

91. Wilmington has violated 15 USC 1692e by using false, deceptive or misleading representations or means in connection with the collection of the alleged debt.

92. Wilmington has violated 15 USC 1692f by using unfair or unconscionable means to collect or attempt to collect the alleged debt.

93. Specifically, Wilmington violated the FDCPA by attempting or threatening to enforce a debt that it knows is not legitimate.  Wilmington has asserted that it is the owner of the Note and Mortgage, which it knew or should have known was false.

94. Wilmington violated the FDCPA by falsely representing the amount of the alleged debt and attempting to collect an amount that is not expressly authorized by the agreement creating the debt.  Monthly statements mailed to Plaintiffs reflect payments for insurance that never took place and payment for taxes that it was not legally entitled to charge against Plaintiff. Wilmington's actions were and are deceptive, misleading and confusing.

95. Wilmington's acts as described above were done with full knowledge and intentionally with the purpose of coercing Plaintiff to pay the alleged debt despite there being no true debt.

96. As a direct and proximate result of Nationstar's violations of the FDCPA, Plaintiff has been damaged.  Plaintiff's damages include but are not limited to emotional distress, suffering, aggravation, humiliation, embarrassment and damage to her credit score.

16

97. Plaintiff has hired undersigned law firm for legal representation in this action and has agreed to pay a reasonable attorney's fee.

98. As a result of the above violations of the FDCPA, Wilmington is liable to Plaintiff for injunction and declaratory relief and for actual damages, statutory damages and reasonable attorney's fees and costs.

WHEREFORE Plaintiff respectfully request that judgment be entered against Defendant for the following:

a. Declaratory and injunctive relief for Defendants violation of the FDCPA;

b. Actual damages;

c. Statutory damages pursuant to 16 USC 1692k;

d. Costs and reasonable attorney's fees pursuant to 16 USC 1692k; and

e. For such other relief as may be deemed mete and proper.

WHEREFORE the Plaintiff respectfully moves this Honorable Court for Judgment against Defendant Wilmington awarding compensatory damages for the intentional infliction of emotional distress through its wrongfully bringing this foreclosure action, the failure to procure insurance on the property for the amount of damages sustained by Hurricane Irma, the damages caused by the resultant failure to repair such as mold, deterioration and excess wear and tear, pain and suffering, pain, suffering, humiliation, wrongful foreclosure, reasonable attorneys' fees, costs and any other damages this Honorable Court deems mete and proper.

/s/  James R. Ackley, Esq
Law Offices of James R. Ackley, P.A.
8678 Marlamoor Lane
West Palm Beach, FL 33412
(561) 594-5671 (phone)
Fl. Bar # 509736
Attorney for Plaintiff
Designated E-mail for Service: eservice@AckleyLegal.net