# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JEANNE KNEZEL,

       Plaintiff,                              Case No. 8:19-cv-0090-T-02TGW

v.

WILMINGTON SAVINGS FUND
SOCIETY, FSB,

       Defendant.
_____/

## **ORDER**

Plaintiff Knezel sues Defendant Wilmington Savings Fund Society, FSB in connection with a mortgage loan she alleges was mishandled by Defendant, which resulted in the eventual foreclosure and divestment of her residential property. Dkt. 78. In her five-count amended complaint, Plaintiff seeks monetary damages. *Id*. This matter is before the Court on Defendant's Motion to Dismiss Complaint (Dkt. 79), Plaintiff's response in opposition (Dkt. 81), and Defendant's reply. Dkt. 85. After careful consideration of the motion to dismiss, applicable law, and the allegations of the amended complaint, the Court grants the motion to dismiss due to a lack of federal subject matter jurisdiction under the *Rooker-Feldman* doctrine. Accordingly, this federal case is remanded and closed.

I.     **Procedural and Factual Background[1]**

Plaintiff purchased a home in Lakeland with her husband in 2003 and signed the mortgage but not the note. Dkt. 78 at ¶ 7. They refinanced the home with Bank of America ("BOA"). Plaintiff and her husband fell into arrears on the mortgage during the recession, and BOA initiated foreclosure in 2009. *Id.* ¶ 14. Plaintiff's husband, the sole signer on the note, filed bankruptcy in 2010, and received a discharge on the note. *Id.* ¶ 16. Defendant Wilmington came to own the mortgage, which it claimed was in arrears since 2010, Dkt. 79 ¶ 2, and in 2015 Defendant filed an *in rem* foreclosure complaint on the mortgage. *Id.* ¶ 22. At that point, various disputes arose as to forced placed insurance on the house with ensuing storm damage, escrow matters, and accounting on the mortgage debt.

Plaintiff defended the foreclosure with present counsel, and filed an amended answer setting forth affirmative defenses. Dkt. 79-1. Included in Plaintiff's defenses were the 19th defense, which alleged bad faith and breach in imposing "force-placed" insurance, including placing this insurance at high cost through a related party, accepting commissions and profit on this insurance, and

---

[1] The facts are taken from Plaintiff's Amended Complaint (Dkt. 78) and state court pleadings filed in the record (Dkt. 63) of which the Court takes judicial notice. *See* footnote 2 in this order. The Court accepts all well-pled allegations as true in ruling on the instant motion and construes them in the light most favorable to Plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). As to the transcript from the underlying mortgage foreclosure trial which is in this record, (Dkt. 63-4), Plaintiff's counsel stated at the August 5, 2020 hearing that "the court's access" to this transcript is "important" to the pending motion. Thus, Plaintiff has invited the Court to review this underlying record, which is not in dispute.

duplicating insurance already procured by Plaintiff in compliance with the note and mortgage. Plaintiff also set forth defense 20, which stated that the force-placed insurance was imposed in a manner to unjustly enrich Defendant Wilmington, without fair market value, and in inequitable circumstances. The 21st affirmative defense alleged a failed accounting of payments made under the debt, and prayed for an accounting of all transactions between the parties. The 22nd affirmative defense invoked the defense of unclean hands, contending that Wilmington induced or caused a false default by unnecessarily forcing insurance on the property that Plaintiff had already insured, and by failing to properly apply and credit the Plaintiff's payments, which were in fact timely. This defense contended Wilmington failed to credit payments, and said Wilmington then improperly demanded sums from Plaintiff to cure the non-existent default that Wilmington claimed. *See* Dkt. 79-1 at 12–19.[2]

---

[2] A court may take judicial notice of and consider public records that are attached to a motion to dismiss and are central to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. The court may do so provided such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). Additionally, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted). Thus, the pleadings filed from prior state court proceedings, *see* Dkt. 63-4, are public records appropriate for judicial notice. *See Talley v. Columbus, Ga. Hous. Auth.*, 402 F. App'x 463, 465 n. 4 (11th Cir. 2010) ("Although the district court was ruling on a motion to dismiss, the court properly examined extrinsic documents detailing [plaintiff's] previous state and federal court cases that related to the condemnation of his property: the cases were central to [plaintiff's] instant federal claim.").

The first amended answer, which contained the defenses set forth above, was permitted by leave of court in May 2016. Dkt 63, Ex. 1 at 231. The nonjury trial was set for August 2017 and then continued at Plaintiff's request. *Id.* at 354–355. Wilmington appeared for trial ready to go as scheduled. Plaintiff did not appear at trial but called in that morning to explain that the Plaintiff's side was unable to appear for personal reasons, as it had been a few days since Hurricane Irma. The trial was again continued until December 2017. *Id.* at 385. Prior to the December, and third, trial setting, Plaintiff sought another continuance, which was granted, and trial was reset for April 26, 2018, the fourth trial setting. *Id.* at 399–403, 403. On April 13, 2018, Plaintiff moved to file a second amended answer and defenses, with newly-alleged counterclaims and a third-party complaint against Bank of America, a new party to the suit. The counterclaims against Wilmington were for failure to purchase insurance/wrongful foreclosure and for intentional and/or negligent infliction of emotional distress. *Id.* at 459–463. The trial court judge denied this motion two days before the April 26 trial. Dkt. 63-5 at 20. No transcript exists from that hearing. Dkt. 63-5 at 15.

The matter was raised again at the start of trial and the state circuit court again denied the motion due to timing, and because the issue regarding insurance was not compulsory. *Id.* The trial court heard two days of testimony on the history of the debt, and how it was handled, including the force-placed insurance

issue. Plaintiff testified as did a CPA on her behalf. The trial court also took written closing and rebuttal arguments, and thereafter heard oral closing arguments. The court entered judgment and the discussion of the judgment included merits consideration of the force-placed insurance issue (Dkt. 63-3, Ex. 1 at 650–653; Dkt. 63-4, Ex. 2 at 869–883).

Plaintiff took a timely appeal. In her appeal to the Second District Court of Appeal, Plaintiff argued that the original lender misapplied payments, dragged its feet in acknowledging insurance, wrongfully force-placed insurance, usurped insurance and tax payments, and then wrongly demanded money to "cure the default." Dkt. 63-5 at 6–7. The misapplication of insurance proceeds continued until 2017, she alleged. *Id.* at 14. She reasserted on appeal the lender misconduct set forth in her affirmative defenses, described above. Dkt. 63-5 at 19. Plaintiff also firmly argued that the trial court erred in denying her late motion to amend. Dkt. 63-5 at 43; 63-6 at 18.

The state appellate court affirmed the judgment of foreclosure, after oral argument, in December 2019. Dkt. 63-7. There was no written opinion.

Plaintiff filed the instant complaint during the pendency of her state court appeal. The complaint was filed in state court and removed here by the Defendants under diversity jurisdiction. Plaintiff sued both Defendants Wilmington and BOA. The BOA claim has settled. Dkts. 68, 69.

The amended complaint against Wilmington seeks recovery in Count I for breach of contract, alleging that Wilmington breached the mortgage, the mortgage note, and any attendant documents such as the escrow waiver agreement. These were the documents that were the subject of, and directly addressed by, the state foreclosure litigation.

In Count II of the amended complaint, Plaintiff attempts to state a claim for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and "The Dodd-Frank Act." Dkt. 78 at ¶¶ 33-51. She sets forth several pages of statutory text and lists forth how Defendant Wilmington violated this text by, *inter alia*: obtaining and wrongfully handling force-placed insurance, failing to notify Plaintiff of any assignment in timely fashion, falsely filing affidavits and verified pleadings in the state court foreclosure suit, failing to timely correct errors regarding payments under the debt, failing to provide true and correct balances for pay off of the loan to avoid foreclosure, failing to remove errors, refund improper late fees or otherwise correct the erroneous accounting on the mortgage, etc. *Id.*

In Count III Plaintiff seeks recovery under the Florida and federal Fair Debt Collection Practices Acts. She alleges Wilmington attempted and threatened to enforce a debt it knew was not legitimate, falsely stated Plaintiff did not comply with the mortgage and did not pay the note which she did, sent her erroneous

monthly statements, and falsely stated the amount of the debt and sought to collect it. Dkt. 78 at ¶¶ 52–66.

Count IV asserts common law fraud. It contends that Wilmington's positions asserted on force-placed insurance were false. Count IV alleges Wilmington claimed entitlement to a mortgage escrow account, and the accounting for sums due and owing on the mortgage, were true – but Wilmington knowingly lied. Also it alleges that Defendant Wilmington swore false damages to the foreclosure court regarding uninsured storm losses. The foreclosure injured Plaintiff's credit and reputation, and caused loss of her home based on intentionally false accounting records, this Count alleges, also causing physical injury and mental injury. Dkt. 78 at ¶¶ 67–75.

Count V, for intentional and/or negligence infliction of emotional distress, echoes Count IV. It states that Defendant wrongfully prosecuted frivolous and meritless claims, which actions were enabled by Defendant "engaging in bullying tactics, and otherwise attempting to wear down the spirits of Plaintiff." Dkt. 78 at ¶¶ - 89). This included Defendant's various false statements concerning the mortgage including related to insurance, adding false charges due to the principal, and falsely acting as servicer. This action included "[t]he institution of a foreclosure action by Defendant when it knew or should have known that it did not have any viable claim to a Note rendered its claim frivolous." *Id*. at ¶ 85. The

7

count further alleges: "The Defendant never owned a Note or mortgage, sued for foreclosure wrongfully, accused Plaintiff of being dishonest, accused all of the contractors who had worked on Plaintiff's home as fraudulently colluding with Plaintiff in order to perpetrate a fraud on Defendant, claimed that it paid for insurance on the home (which turned out to be another false statement), claimed that Plaintiff had failed to timely pay her mortgage (another false statement), failed to properly decelerate the debt after BOA's foreclosure was voluntarily dismissed and sought to take Plaintiff's home from her without any right whatsoever." *Id*. at ¶ 87.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III. Discussion

<u>*Rooker-Feldman* Doctrine Bars this Suit</u>

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Here, Defendant claims this Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine[3]. "The *Rooker–Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). The Supreme Court applies the doctrine to only cases "of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the *Rooker-Feldman* doctrine, federal courts do not have jurisdiction to review state court decisions. *May v. Morgan Cty. Ga.*, 878 F.3d 1001, 1004 (11th Cir. 2017) (citations omitted). The doctrine is a narrow one. To apply the doctrine, a defendant must demonstrate the case is one (1) brought by a state-court loser (2)

---

[3] The *Rooker-Feldman* doctrine arises from the following cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

complaining of injuries caused by a final state-court judgment (3) that was rendered before the district court proceedings commenced and (4) invites the district court to review and reject that judgment. *Id.* (citation omitted). Plaintiff here is a state-court loser who is complaining about injuries caused by a state judgment against her in a foreclosure action. The judgment was final well before this amended complaint. *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009) (holding state proceedings have ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment is completed).

The Court concludes Plaintiff's case invites district court review and rejection of the state court's judgments. Notably, although the *Rooker-Feldman* doctrine is narrow in its application, "a state court loser cannot avoid *Rooker-Feldman's* bar by cleverly cloaking her pleadings in the cloth of a different claim. Pretext is not tolerated." *May*, 878 F.3d at 1005. To determine whether a claim invites rejection of a state court decision, courts must consider whether a claim was either actually adjudicated by a state court or is "inextricably intertwined" with a state court judgment. *Target Media Part. v. Specialty Marketing Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018) (citation omitted). A claim is "inextricably intertwined" with a state court judgment if it asks to "effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation and citation omitted). That said, a

federal claim is not "inextricably intertwined" with a state court judgment when there was no "reasonable opportunity to raise" that claim during the relevant state court proceeding. *Id.* (citation omitted).

Here, there was a reasonable opportunity to raise these claims, and they were raised both at the trial court and appellate court level. Had the counterclaims been raised timely, they could have been heard. Although the state circuit court denied a tardy, and last-minute, second motion to amend to assert counterclaims and bring in a third-party defendant after four continuances, the issue related to insurance, mortgage accounting, proper allocation of payments, etc. were entirely and fully litigated both at trial as affirmative defenses, and on appeal. The circuit court below by its judgment found no material breach of the mortgage and it adjudicated amounts due, proper insurance issues, etc. Mortgage payments and accounting were heard in evidence, addressed, and adjudicated on the merits. These claims are just refashioned here as other causes of action in an attempt to change a loss in state court into a win. *See generally Figueroa v. MERSCORP, Inc.*, 477 F. App'x 558 (11th Cir. 2005); *Harper v. Chase Manhattan Bank*, 138 F. Appx 130, 132 (11th Cir. 2005) (dismissing TILA and FDCPA claims as inextricably intertwined with state foreclosure suit). This Court would have to partially reverse or rule against the state court judgment below to fashion relief sought here, something this

Court may not do. *Echeverry v. Wells Fargo Bank, N.A.*, No. 16-cv-61635-Gayles, 2017 W.L. 733374 (S.D. Fla. Feb. 24, 2017).

Plaintiff may seek remedies in state court after remand. No subject matter jurisdiction exists here and the amended complaint is dismissed. The Clerk is directed to terminate any pending motions, to remand this case to the Tenth Judicial Circuit, in and for Polk County, Florida, and to thereafter close the file.

**DONE AND ORDERED** in Tampa, Florida on August 6, 2020.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of Record